IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00071-REB-KLM

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Plaintiff(s),

v.

PAUL G. WOLF,

    Defendant(s).
_____

**ORDER DENYING MOTION FOR IMPOSITION OF CONSTRUCTIVE TRUST AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's Motion for Imposition of Constructive Trust [Docket No. 39; Filed February 28, 2008], Plaintiff's Brief in Support of Motion for Imposition of Constructive Trust [Docket No. 40; Filed February 28, 2008] (collectively, the "Constructive Trust Motion"), Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to 29 U.S.C. § 1132(G) [Docket No. 41; Filed February 28, 2007] and Plaintiff's Brief in Support of Motion for Attorneys' Fees Pursuant to 29 U.S.C. § 1132(G) [Docket No. 42; Filed February 28, 2008] (collectively, the "Attorneys' Fees Motion"). Defendant has not responded to either motion. The Court has reviewed the Motions, the entire case file and applicable case law and is sufficiently advised in the premises. For the reasons set forth below, IT IS HEREBY **ORDERED** that the Constructive Trust Motion is **denied** and that the Attorneys' Fees Motion is **granted in part**.

I. Factual and Procedural Background

The factual and procedural background of this matter is set forth in detail in the Recommendation of United States Magistrate Judge dated January 22, 2008 [Docket No. 33], and is abbreviated here. Plaintiff filed this action in January 2007, in which it sought reimbursement of an overpayment of long-term disability ("LTD") insurance benefits to Defendant pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiff alleged that Defendant participated in a group welfare benefits plan which resulted in payment of LTD benefits to him, and that his participation in that plan required him to apply for Social Security Disability ("SSD") benefits. Plaintiff further alleged that pursuant to the terms of the plan, it had the right to reduce Defendant's LTD benefits by the amount of any SSD benefits paid to him and the right to reimbursement by Defendant for any overpayment of LTD benefits. Plaintiff asserted that Defendant had received SSD benefits, but failed and refused to reimburse Plaintiff for the overpayment of LTD benefits. Complaint at 1-6 [Docket No. 1].

On June 7, 2007, Plaintiff filed a Motion for Judgment on the Pleadings [Docket No. 19] to which Defendant did not directly respond. Defendant, who is proceeding *pro se*, filed a Motion to Dismiss instead, contending that the case should be dismissed due to alleged settlement conference misconduct by Plaintiff and its counsel [Docket No. 22]. Defendant's Motion to Dismiss contains many references to his financial difficulties allegedly caused by Plaintiff's conduct, and implies that he has spent a significant portion of the SSD benefits he was paid. *Id.* at 2-4. Because Defendant is proceeding *pro se*, his pleadings must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

In the Recommendation dated January 22, 2008, the Court recommended that Plaintiff's Motion for Judgment on the Pleadings be granted, along with Plaintiff's requests for imposition of a constructive trust and an award of attorneys' fees, and that Defendant's Motion to Dismiss be denied [Docket No. 33]. The District Court adopted the Recommendation in part, but rejected that portion which recommended that a constructive trust be imposed and that Plaintiff be awarded attorneys' fees [Docket No. 36; Filed February 7, 2008]. The Motions at issue followed. The District Court Judge referred them to this Court on February 29, 2008.

## II. Constructive Trust Motion

A.  Plaintiff's Request for Imposition of a Constructive Trust

Plaintiff asserts that § 502(a)(3) of ERISA allows plan fiduciaries to seek appropriate equitable relief to enforce terms of an employee welfare benefits plan like the one at issue in this case. Plaintiff argues that "as long as the funds subject to the lien are in the possession and control of the beneficiary," imposition of a constructive trust is appropriate. Constructive Trust Brief at 2 [Docket No. 40].

Plaintiff further asserts that the express terms of the welfare benefits plan at issue in this case created an equitable lien on "a particular fund – the SSD benefits – and a particular share of that fund – <u>all</u> of the SSD benefits awarded" to Defendant, over which Defendant had possession and control. *Id.* at 4 (emphasis added).[1] Plaintiff therefore seeks imposition of a constructive trust "over the entirety of the SSD benefits awarded to

---

[1] As noted in the Recommendation, the contract between Plaintiff and Defendant allowed Defendant to choose to receive full disability benefits from Plaintiff without deduction for potential SSD benefits. In that event, the contract specified that Defendant would "repay any overpayment in full within 30 days from receipt of the Social Security award check." Recommendation at 7-8 n.5 [Docket No. 33] (citing [Docket No. 1-2]).

[Defendant] (in the current amount of $37,975.27)." *Id.*

According to Plaintiff's pleadings, the amount of the constructive trust sought is derived from the original amount of the overpayment less partial repayments effected over time as a result of Plaintiff's withholding of portions of Defendant's monthly LTD benefits. However, Plaintiff has provided no accounting of the overpayment, and has neglected to provide other evidence which is critical to determination of the appropriate amount of the constructive trust, including the amount of the SSD benefits paid to Defendant, whether Defendant received a single "Social Security award check" or whether he continues to receive SSD benefits, and its method for calculating the overpayment in this case.[2]

As Plaintiff seeks to impose a constructive trust in a particular amount, further discussion of the evidence relating to that amount is warranted. When Plaintiff discovered that Defendant had received SSD benefits, it apparently calculated the amount of the overpayment (it does not say how) and began applying some portion of Defendant's LTD benefits towards the overpayment. In Plaintiff's pre-litigation correspondence with Defendant about the overpayment dated April 24, 2006, its counsel stated that the amount of the overpayment to Plaintiff was "approximately $55,574.86." The letter further stated that Plaintiff had been applying a "portion of [Defendant's] monthly [LTD] benefit in the amount of $259.05" to the overpayment [Docket No. 42-2]. The letter did not explain how the amount of the overpayment was calculated, or why Plaintiff was applying only a "portion" of the LTD benefits to the overpayment.

---

[2] In the Motion for Judgment on the Pleadings, Plaintiff stated that "[i]n December 2004, [Defendant] was awarded SSD benefits, retroactive to June 2002" [Docket No. 18 at 4]. The Motion does not provide information about whether Defendant continued to receive SSD benefits after December 2004 or the amount of SSD benefits paid to Defendant at any time.

4

Plaintiff's Motion for Judgment on the Pleadings, filed on June 7, 2007, indicated that Plaintiff continued to withhold $259.05 per month from Defendant's LTD benefits checks and that the amount of the overpayment was then "approximately $52,102" [Docket No. 19 at 2]. At that time, Plaintiff calculated that "at the current rate it will be 15 years before the balance is paid off." *Id.* The motion further asserted that Defendant had been "overpaid LTD benefits in the amount of $56,511.06," again without explanation of the calculation and without explanation of the *increase* in the overpayment amount since the April, 2006 letter. *Id.* at 4. Likewise, Plaintiff provided no explanation of its decision to withhold a particular amount ($259.05) of the monthly LTD benefits.

In the Constructive Trust Motion filed eight months later, Plaintiff stated that it "continues to apply the $438.05 from [Defendant's] ongoing monthly benefit check towards the overpayment due." Constructive Trust Brief at 5 n.1 [Docket No. 40]. Again, no explanation was provided regarding the increased amount of the monthly withholding of Defendant's LTD benefits. As stated *supra*, Plaintiff further asserted that the "current amount" of the overpayment is "$37,975.27," *id.* at 5, apparently due to the on-going reduction in it resulting from monthly application of some portion of Defendant's LTD benefits checks. Plaintiff did not aver, either at the time of filing the Constructive Trust Motion or afterwards, that it has stopped applying some portion of Defendant's monthly LTD benefits check toward the overpayment. Consequently, as of the date of this Order, the exact amount of the overpayment owed by Defendant is unclear.

As far as the Court can determine, if Plaintiff has continued to apply some portion of Defendant's monthly LTD benefits toward the overpayment, the amount of the debt for which it seeks repayment is not fixed at the figure set forth in its Motion for Constructive

Trust. But if Defendant's debt decreased since the Constructive Trust Motion was filed, the amount of the proposed constructive trust should also decrease.³ Moreover, Plaintiff has not addressed Defendant's assertion that he has spent the SSD benefits, which is the very fund against which Plaintiff seeks imposition by court order of a constructive trust. *See id.* at 4. If Defendant has indeed dissipated the SSD benefits, imposition of a constructive trust in the amount sought by Plaintiff could encumber Defendant's personal assets, not simply the fund of wrongfully held SSD benefits.

B. Analysis

In 2002, the United States Supreme Court issued a landmark decision about the scope of equitable relief available under ERISA. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). In *Knudson*, the Court held that ERISA did not authorize a plan fiduciary's action for specific performance of the reimbursement provision of a plan, because the fiduciary sought "to impose personal liability on [the plan beneficiary] for a contractual obligation to pay money – relief that was not typically available in equity." *Id.* at 210. The *Knudson* opinion explained that, as opposed to specific performance, constructive trusts and equitable liens <u>were</u> the types of restitution generally available in equity, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. The Court recited the longstanding equitable principle that "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a

---

³ Plaintiff has consistently asserted that it seeks imposition of a constructive trust only for the unreimbursed amount of the overpayment.

constructive trust of or an equitable lien upon other property of the [defendant].'" *Id.* (citing Restatement of Restitution § 215 cmt. a, at 867 (1936)). Importantly, the plan beneficiary in *Knudson* had negotiated settlement of a tort claim, the proceeds of which were placed in a trust pursuant to state law. The plan fiduciary specifically sought reimbursement of medical expenses from that trust fund. *Id.* at 208.

*Knudson* did not resolve the question of whether a plan fiduciary can recover pursuant to § 502(a)(3) of ERISA when the plan beneficiary actually possesses identifiable funds to which the fiduciary is entitled. That issue was resolved four years later in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).

In *Sereboff,* an ERISA plan fiduciary (Mid Atlantic Medical Services, Inc.) paid health insurance benefits on behalf of plan participants (the Sereboffs) who were injured in an automobile accident. The Sereboffs later settled a lawsuit they filed against the tortfeasors responsible for their injuries, and their attorney paid the settlement proceeds to them. Mid Atlantic had previously claimed a lien on anticipated proceeds from the suit for the medical expenses it had paid on behalf of the Sereboffs, but after the lawsuit settled, no money was paid to Mid Atlantic in satisfaction of the claimed lien. Mid Atlantic then sued the Sereboffs pursuant to § 502(a)(3) of ERISA. The District Court approved a stipulation by the parties to set aside a portion of the settlement funds in the amount of the claimed lien until the litigation was over. *Id.* at 360. Importantly, in *Sereboff*, the funds sought by the plan fiduciary were in the possession of the plan beneficiaries, and both the amount of the claimed lien and the principal amount of the fund from which it could be satisfied were known and fixed.

The *Sereboff* lawsuit reached the United States Supreme Court due to a split in

authority among the Circuit Courts of Appeal over whether § 502(a)(3) of ERISA authorizes a plan fiduciary to recover in the circumstances at issue in that case. *Id.* at 361. The Supreme Court first addressed the question of whether the relief sought by the plan fiduciary was "'equitable' under § 502(a)(3)(B)." *Id.* The Court reiterated its holding in *Knudson* that "one feature of equitable restitution [is] that it [seeks] to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" *Id.* at 362 (citing *Knudson*, 534 U.S. at 213). Because Mid Atlantic sought specifically identifiable funds that were in the possession and control of the Sereboffs, the Court held that the action could proceed pursuant to § 502(a)(3) of ERISA.

The Court next addressed the issue of whether the basis of Mid Atlantic's claim was equitable. The Court concluded that the "impediment to characterizing the relief sought in *Knudson* as equitable is not present here." *Id.* at 362. Scrutinizing the language of the plan at issue, the Court held that it "specifically identified a particular fund, *distinct from the Sereboffs' general assets* . . . and a particular share of that fund to which Mid Atlantic was entitled." *Id.* at 364 (emphasis added). As a result, the Court determined that Mid Atlantic could, "as soon as the [settlement] fund was identified," rely on "a familiar rule of equity" to collect for the medical bills it had paid by "following" a portion of the lawsuit recovery into the Sereboffs' hands and by imposing on that portion a constructive trust or equitable lien. *Id.* (citations omitted). In addressing the Sereboffs' argument that the Court should enforce equity's traditional "strict tracing rules," which would require that Mid Atlantic "trace [its] money or property to some particular funds or assets," the Court held that "the fund over which an [equitable] lien is asserted need not be in existence when the contract containing the lien provision is executed." *Id.* at 364-66.

Notably, the *Sereboff* decision did not address imposition of a constructive trust over a fund that may have dissipated since its identification. Nor did the decision address imposition of a constructive trust when the amount of the purported equitable lien has decreased since the fund's identification. Plaintiff in the case at bar argues that *Sereboff*'s holding that "tracing is not a requirement for a constructive trust or equitable lien created by agreement," coupled with the Court's decision that "a lien by agreement . . . is created as soon as the fund is identified," means that "any dissipation of the fund (of SSD benefits) does not prevent the establishment of an equitable lien under Section 502(a)(3)." Constructive Trust Brief at 5 [Docket No. 40].

Plaintiff's argument is not persuasive. First, the *Sereboff* holding regarding tracing is a narrow one, in that it is based on the Court's reading of an earlier case which allowed plaintiffs to secure an equitable lien despite the fact that they "could not identify an asset they *originally possessed*, which was improperly acquired and converted into property the defendant held . . . ." *Sereboff*, 547 U.S. at 365 (emphasis added) (citing *Barnes v. Alexander*, 232 U.S. 117 (1914)). In other words, the Court's holding that tracing is not required simply means that when an equitable lien by agreement is at issue, the plaintiff need not identify an asset he "originally possessed" that was wrongfully converted by the defendant. This holding was central to the Court's decision, because Mid Atlantic did not "originally possess" the settlement fund it ultimately sought to recover from the Sereboffs pursuant to § 502(a)(3) of ERISA. The Court's holding that tracing is not required simply does not address whether it matters that the specifically identified fund sought to be recovered has been dissipated.

Indeed, nothing in *Sereboff* overrules the clear holding of *Knudson* that imposition

of a constructive trust or equitable lien is not appropriate "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains . . .'. [T]he plaintiff 'cannot enforce a constructive trust of or an equitable lien upon *other* property of the [defendant].'" *Knudson*, 534 U.S. at 213-14 (emphasis added) (citation omitted). The Court's decision in *Knudson* was based on the longstanding equitable principle that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. This Court reads the *Knudson* and *Sereboff* decisions, taken together, to hold that a constructive trust or equitable lien may be imposed in an action brought pursuant to § 502(a)(3) of ERISA when the particular funds which plaintiff seeks to "restore" were not in plaintiff's "original possession," but nevertheless are "specifically identifiable" pursuant to a written agreement, in the possession of the defendant, and not dissipated.

Other courts have interpreted *Sereboff* so as to validate the longstanding equitable rule precluding imposition of a constructive trust when the funds sought to be recovered have been dissipated, as set forth in *Knudson*. In *Security Mutual Life Ins. Co. v. Joseph*, No. Civ. A 06-CV-4804, 2007 WL1944345 (E.D. Pa. July 2, 2007) (unpublished decision), a case very similar to the one at bar, plaintiff brought a claim pursuant to § 502(a)(3) of ERISA for reimbursement of disability benefits overpayments allegedly due to defendant's receipt of social security disability benefits. The Court held that plaintiff was entitled to discovery regarding its alleged overpayment of benefits because "[i]f the outcome of the discovery process reveals that plaintiff's payments to defendant have been dissipated or cannot be otherwise specifically identified, plaintiff may be precluded from moving forward

in this action for want of a remedy." *Id.* at *3; *see also Afridi v. Nat'l City Bank*, 509 F. Supp. 2d 655, 661 (N.D. Ohio 2007) (referring to no-dissipation rule in granting defendant's motion to dismiss plaintiff's claim for restitution of assets pursuant to § 502(a)(3) of ERISA on grounds of failure to state a claim upon which relief could be granted); *UnitedHealth Group, Inc. v. Dowdy*, No. 8:06-CV-211-T-23EAJ, 2007 WL3202473, at *2 (M.D. Fla. Oct, 29, 2007) (unpublished decision) (construing *Sereboff* to limit plan fiduciary's recovery to settlement or judgment funds, not the general assets of a plan participant, and finding that "the existence, identification and dissipation of Defendant's settlement proceeds are relevant to Plaintiff's ability to recover on its equitable claim").

In light of this precedent, the Court cannot hold that Plaintiff is entitled to imposition of a constructive trust in these circumstances. Plaintiff bears the burden of proving the "facts that give rise to the trust," including the amount of the wrongfully converted funds and that the specifically identifiable funds it seeks to recover have not been dissipated. *Keach v. U.S. Trust Co., N.A.*, 244 F. Supp. 2d 968, 974 (C.D. Ill. 2003); *see also Dille v. Carter Oil Co.*, 192 F.2d 791, 796 (10th Cir. 1951); *Smith v. Metro. Life Ins. Co.*, 344 F. Supp. 2d 696, 706 (D. Colo. 2004); *In re Rocor Int'l, Inc.*, 352 B.R. 319, 329 (W.D. Okla. 2006). Plaintiff has failed to meet its burden of proof on these issues. Accordingly, the Motion for Imposition of Constructive Trust is **denied.**

### III. Attorneys' Fees Motion

Plaintiff seeks an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). Plaintiff has submitted evidence of $20,134.50 in attorneys' fees incurred between April 13, 2006 and November 15, 2007, and total costs incurred of $582.99 [Docket No. 42-4 at 7-16]. The attorneys' fees sought by Plaintiff include fees incurred for preparing the

Motion for Judgment on the Pleadings, which included the ultimately unsuccessful request for imposition of a constructive trust. Plaintiff does not seek fees incurred for preparation of the Constructive Trust Motion which I have addressed *supra.*

Reasonable fee awards pursuant to ERISA are discretionary in nature. *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 (10th Cir. 1992). The Court should apply the following five-part test to determine whether to award fees and, if so, how much: (1) the degree of Defendant's culpability or bad faith; (2) the ability of Defendant to personally satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against Defendant would deter others from acting under similar circumstances; (4) whether Plaintiff sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* at 1209 n.17. I need not consider each factor, and no single factor should be considered dispositive. *Id.*

Regarding the first factor, Plaintiff contends that Defendant acted in bad faith throughout his post-application conduct with Plaintiff by disregarding his obligations to notify Plaintiff that he had been awarded SSD benefits, by refusing to acknowledge Plaintiff's multiple attempts to work out a repayment plan, by delaying the litigation, and by filing pleadings that lacked merit. Attorneys' Fees Brief at 3-4 [Docket No. 42]. I agree. This factor weighs in favor of an award of attorneys' fees.

Regarding the second factor, Plaintiff "anticipates" that Defendant will have the ability to personally satisfy an attorneys' fees award from the proceeds of a medical malpractice lawsuit he is allegedly pursuing. *Id.* at 4 n.2. However, Defendant's *pro se* pleadings are replete with references to his financial difficulties, including a bankruptcy filing

12

and his inability to afford counsel to represent him in this litigation. Motion to Dismiss at 3 [Docket No. 22]; Objection to Motion for Judgment and Award of Fees at 1-2 [Docket No. 34]. Based on the record, I cannot find that Defendant is able to personally satisfy an attorneys' fee award. This factor weighs against such an award.

Regarding the third factor, Plaintiff contends that an award of attorneys' fees "will deter other plan members from refusing to honor their repayment obligations and from engaging in conduct that results in unnecessary litigation." Attorneys' Fees Brief at 4 [Docket No. 42]. In this case, I agree. This factor favors an award of attorneys' fees.

Regarding the fourth factor, Plaintiff asserts that the lawsuit benefitted all plan members by seeking to recover benefits to which one member was not entitled. Plaintiff asserts that "when claims are erroneously paid under a plan, the costs of providing it increase and *potentially* lead to a decrease in the kinds of benefits provided by the plan's sponsor." *Id.* at 5 (emphasis added). This is thin support for the assertion that Plaintiff sought to benefit all participants and beneficiaries of an ERISA plan in bringing the lawsuit, particularly as Plaintiff had a non-litigation method to recover the overpayment. This factor weighs slightly in favor of an award of attorneys' fees.

Regarding the fifth factor, the relative merits of the parties' positions, Plaintiff points out that Defendant utterly failed to adduce any factual or legal support for his position both before and during the litigation. *Id.* Ultimately, although Plaintiff obtained judgment on the pleadings, its attempt to impose a constructive trust failed. Overall, Plaintiff's position had greater merit than Defendant's. Accordingly, this factor weighs in favor of an award.

Having considered all of the relevant factors, I find that an award of attorneys' fees and costs is appropriate in this case. The starting point for any calculation of a reasonable

13

attorneys' fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Malloy v. Monahan,* 73 F.3d 1012, 1017-18 (10th Cir.1996). Generally, a party seeking an award of attorneys' fees and costs must demonstrate that the fees and costs he seeks are reasonable. *Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007) (unpublished decision). Therefore, Counsel must make a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 435.

Although Plaintiff has not obtained all of the relief it sought, Plaintiff has prevailed. Further, Plaintiff has not sought fees related to the unsuccessful Constructive Trust Motion. However, Plaintiff's counsel's time entries reflect approximately $20,000 spent to obtain a judgment on the pleadings in pursuit of a $55,000 obligation – an obligation that Plaintiff already had the ability to collect from Defendant, albeit over time. Under the circumstances present in this case, I find that Plaintiff's fees are excessive and should be reduced to $12,000. *See id.* at 436-37 (holding that the Court "necessarily has discretion in making this equitable judgment" and "may simply reduce the award to account for limited success"); *White v. GMC, Inc.*, 908 F.2d 675, 684 (10th Cir. 1990) (noting that the fees accumulated to secure a dismissal must be reasonably related to the type of suit at issue); *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) ("It does not [always] follow that the amount of time *actually* expended is the amount of time *reasonably* expended."). Accordingly, the Attorneys' Fees Motion is **granted in part.** Plaintiff is awarded its reasonable attorneys' fees in the amount of $12,000.00, and its costs in the amount of $582.99.

Dated: May 23, 2008

BY THE COURT:

s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix